831 F.2d 296
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patricia PARKER, Administratrix of the Estate of Charles
Parker, Plaintiff,
Malvena Brown, Defendant-Appellant,
v.
UNITED STATES of America, Intervenor-Appellee,
State of Ohio, Bureau of Employment Services, Additional Defendant.
 No. 86-3799
 United States Court of Appeals, Sixth Circuit.
 October 5, 1987.
 
 Before RALPH B. Jr. GUY, and BOGGS, Circuit Judges, and SUHRHEINRICH, District Judge.*
 PER CURIAM.
 
 
 1
 The question presented here is whether the district court abused its discretion under Fed. R. Civ. P. 60(b)(6) in vacating its prior order of dismissal. We conclude that the vacation of the dismissal, under the circumstances of this case, did not constitute an abuse of discretion and accorddingly the district court's order, including its entry of judgment in favor of the United States, is affirmed.
 
 I.
 
 2
 In 1974, Charles Parker, brother of defendant Brown, purchased residential property in Cincinnati, Ohio, for approximately $74,500. At the time of this purchase, Parker owed unpaid federal income taxes for several previous years. Although Parker and his wife resided on and maintained the property, it was titled in Brown's name. In 1980, Parker, alleging that he owned the property and that his sister held title only as a fiduciary, sued Brown in the Court of Common Pleas of Hamilton County, Ohio, to require her to transfer title to him. Before the case was decided, Parker died and his widow, Patricia Parker, was substituted as plaintiff.
 
 
 3
 In 1983, the Internal Revenue Service made tax assessments against Parker's estate amounting to approximately $319,000 plus accrued interest and penalties. Thereafter, the United States moved to intervene in the state court suit in order to reduce its assessments to judgment and foreclose its liens against the property on the theory that titling the property in Brown's name was a fraudulent conveyance. After the motion to intervene was granted, the government removed the case to the United States District Court for the Southern District of Ohio. Parker's estate subsequently assigned all of its interest in the property to the United States as part of a settlement of the tax claims.
 
 
 4
 The parties then engaged in a series of settlement negotiations, in which various proposals were offered and rejected. On November 21, 1984, a final pretrial conference was held in the chambers of the presiding judge, S. Arthur Spiegel. The discussions which ensued at that meeting give rise to the dispute at issue today. During this conference, terms of settlement were discussed whereby Brown would sell the property at a price determined by her, provided the government would first receive $85,000 from the sale proceeds. Brown was to place the property for private sale and make all efforts to effectuate a sale within a time period of one year. In addition, Brown agreed to grant an $85,000 mortgage in favor of the United States which the government could foreclose if the property was not sold within a year. Further discussion was had to the effect that, should the property not be sold within a year, the government would be entitled to interest on its mortgage at the rate of ten percent, such interest to run from the end of the one-year sale period until the date the government received payment from foreclosure of the mortgage. Finally, it was understood that, by virtue of settlement, the government's case would be dismissed with prejudice in order to permit Brown to convey clear title to the property.
 
 
 5
 A review of the transcript of this conference reveals that, toward the end of the negotiations, the court instructed:
 
 
 6
 You [defendant's attorney] submit your offer in writing after you check it out with your client. And you [the government] respond. And you have got two weeks to respond. We'll give you another trial date and this case will be tried the next date.
 
 
 7
 . . ..
 
 
 8
 We'll put on an order vacating the trial date and we'll be ready to go on that date if it is not settled. As soon as it's settled, let me know so I can take it off the docket.
 
 
 9
 Transcript at 35-36 and 44.
 
 
 10
 On January 30, 1985 (over two months later), counsel for Brown sent the government unexecuted copies of the mortgage agreement, settlement agreement, and various releases and entries for dismissal of the federal and state lawsuits. It is undisputed that none of these documents were ever executed or returned by the government. However, on February 12, 1985, the district court, 'having been advised by counsel for the parties that the above action has been settled,' dismissed the case with prejudice, provided that either party could reopen within sixty days if settlement were not consummated.[1]
 
 
 11
 Neither party contacted the court regarding this matter until March 31, 1986, when the government filed its motion to vacate the order of dismissal on the grounds that Brown had defaulted on the agreement by selling the property on March 28, 1986, without remitting the agreed $85,000 portion of the selling price to the United States.[2] In opposition, Brown alleged that the government's motion was untimely because it was not filed within the sixty-day period set forth in the dismissal order and, furthermore, that no agreement had ever been reached at the November 21 pretrial conference. The court granted the government's motion, finding that, based upon a thorough review of the transcript of the conference as well as Judge Spiegel's own recollections of the 'tenor of the discussions,' a settlement in principle had been reached and that the interests of justice mandated that the entry of dismissal be set aside. Contending that the transcript revealed, to the contrary, that no settlement was ever agreed upon and that the government's failure to reopen the claim within sixty days of the entry of dismissal barred it from seeking vacation, Brown appealed the action of the district court.
 
 II.
 
 12
 A comprehensive review of the transcript as well as consideration of the equities reveals no abuse of discretion by the district judge. The transcript clearly demonstrates that it was Brown's concern that the government would reject her offer, and not the other way around. It is true that certain language used by the attorneys at the conference implies that Brown would formally tender the agreed upon offer for execution by the United States. Although Brown's attorneys stated that they would forward the necessary papers within one week, they were not tendered until over two months later. Therefore, it is apparent that not only the government, but Brown as well, failed to live up to the timetable envisioned by the court. Despite the fact that the documents were never executed by the government,[3] Brown does not dispute receipt of the court's February 12, 1985, order of dismissal which was clearly predicated upon the court's belief that a formal settlement had taken place. At that point, it as incumbent upon Brown, not the government, to notify the court within sixty days of that date that the government had failed to consummate the agreement as contemplated. She not only failed to do so, but she secured dismissal of the state court suit by virtue of the district court's dismissal in order to convey clear title to the property, apparently hoping that she could rely on the dismissal to void any obligation to the United States.
 
 
 13
 The documents submitted for the government's approval conform in all respects to the terms that were set forth at the conclusion of the pretrial conference. Therefore, the effect of the lapse of the sixty day reopening period without notification by either party was to bind both parties to the terms which were set forth in the documents tendered by Brown. If defendant did not wish to be bound by that agreement, she should have so informed the court in a timely manner. We have pointed out the inherent power of a trial court to enforce a settlement agreement even where the agreement has neither been reached in the presence of the court nor reduced to writing. Kukla v. National Distillers Products Company, 483 F.2d 619, 621 (6th Cir. 1973). In Kukla, we held that, where the material terms of an alleged settlement agreement are in dispute, an evidentiary hearing in the district court is required prior to judicial enforcement of the settlement. Id. In the case at bar, Brown relies on the failure of formal execution of a written agreement to relieve her of obligations thereunder. However, she does not dispute any of the terms comprising the agreement as alleged by the government. We see no necessity for remand given the fact that the district judge responsible for entering the dismissal order was also present at the conference where settlement negotiations were conducted and conditioned his vacation of that order specifically on review of the written transcript as well as his own personal recollections of the negotiations. After vacating its previous order of dismissal, it was not improper for the court to exercise its inherent authority to enforce the parties' agreement even though its written terms were never formally adopted.[4]
 
 III.
 
 14
 Brown's argument that the grant of the government's motion was improper because untimely merits little consideration. Although Brown argues that the true thrust of the motion is one for relief of judgment based on excusable neglect under Fed. R. Civ. P. 60(b)(1), which is limited to a one-year time period, this is clearly not the case. To be sure, the government attorney was put on notice that Brown was seriously considering repudiation of the agreement over seven months prior to filing the motion to vacate. And we do not condone the government's dilatory conduct in failing to follow-up on its request for the pretrial transcript for a period of six months. However, the terms of the agreement specifically allowed Brown a period of one year's time in which to sell the property and remit the agreed sum to the United States. Although Brown's proposed settlement documents gave the one-year anniversary date of December 31, 1985, the court determined that date to be February 12, 1986, one year from the entry of dismissal. On this construction of the agreement, the government would have had no reason to request vacation of the dismissal order until that date had passed, since its right to foreclose on the mortgage did not accrue until then. Since the motion to vacate was based on Brown's repudiation of the settlement agreement, it properly falls under Rule 60(b)(6).[5]
 
 
 15
 In Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1371 (6th Cir.) cert. denied, 429 U.S. 862 (1976), we held that a party's attempted repudiation of a settlement agreement upon which prior dismissal had been based constituted 'full justification' for subsequent vacation of the dismissal under Rule 60(b)(6). That subsection requires only that the motion be made within a 'reasonable time.' The question of what constitutes a 'reasonable time' depends on the factual circumstances of each case, Smith v. Secretary of Health and Human Services, 776 F.2d 1330, 1333 (6th Cir. 1985), and will not be disturbed on appeal absent an abuse of discretion, Marshall v. Monroe & Sons, Inc., 615 F.2d 1156, 1160 (6th Cir. 1980). The district judge specifically found the timing of the government's motion, which was filed approximately three weeks after their receipt of the transcript and less than two months after the dismissal order's one-year anniversary date, to have been reasonable. We decline to overturn that finding, especially in view of the fact that the result would be to allow Brown to take full advantage of the dismissal of the government's claims against her, which dismissal was predicated on the assumption of settlement, and at the same time to repudiate the settlement in response to the government's attempt to receive the benefit of its bargain.
 
 
 16
 AFFIRMED.
 
 
 
 *
 Honorable Richard F. Suhrheinrich, United States District Court, Eastern District of Michigan, sitting by designation
 
 
 [1]
 The question of who actually advised the court of this alleged settlement is disputed and remains unresolved. Counsel for Brown assert that they never made such representation and that the order was presumably entered upon the government's word alone. The government simply points to the wording of the order as proof that both parties contacted the court, but does not indicate what its actions were or by whom they were taken. An affidavit filed by the United States in support of its motion to vacate, filed over one year after entry of dismissal, simply states that the Justice Department attorney originally assigned to the case and involved in the negotiations had 'left government service.'
 
 
 [2]
 On March 6, 1986, Brown secured the dismissal of the pending state court suit, relying on Judge Spiegel's February 12, 1985, order of dismissal with prejudice, and thereby obtained clear title preparatory to the property's sale. The property was sold for $115,000 on March 28, 1986, and Brown represents that, after satisfying tax liens levied by the Ohio Bureau of Employment Services, including interest and other costs of sale, she netted substantially less than $85,000 from the sale
 
 
 [3]
 The record in this case reveals a substantial degree of laxity in the government's handling of this matter. It consistently failed to respond to offers or written communications in a timely fashion, the settlement documents forwarded for signature were never executed, and, upon learning from Brown's counsel that she was having 'second thoughts' about the agreement in August of 1985, its attorneys failed to secure a copy of the transcript needed to support its intended motion to vacate until seven months later
 Although it relies on the fact that the initial attorney on the case left government service and alleges that the transcript delay occurred because the court reporter did not have the correct address, the fact is that a consistent pattern of needless and unwarranted delay on the government's part has contributed significantly and regrettably to the creation of this dispute.
 
 
 [4]
 In Hinsdale v. Farmers National Bank, No. 86-3836 (6th Cir., July 22, 1987), we held that enforcement of a settlement agreement upon which a prior dismissal with prejudice had been predicated could be sought only through an independent action for specific performance or a Rule 60(b) motion. Slip op. at 4-5. In that case, we vacated the district court's order of enforcement for lack of jurisdiction because the prior dismissal was never vacated. Such vacation serves to reopen the case and 'once the proceedings are reopened, the district court has inherent jurisdiction to enforce the settlement agreement.' Hinsdale, slip op. at 5
 
 
 [5]
 Fed. R. Civ. P. 60(b) provides, in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:
 (6) any other reason justifying relief from the operation of the judgment.
 The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.